18-5162
**NO. ___**

=========================================================

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

=========================================================

IN RE DELCHON WEATHERSPOON

_____

PETITIONER: Delchon Weatherspoon

RESPONDENT: The Honorable Samuel H. Mays, United States District Court for the Western District of Tennessee

RESPONDENT AND REAL PARTY IN INTEREST: Shelby County Sheriff Bill Oldham

District Court Case Number 2:17-cv-2535-SHM-cgc

_____

## PETITION FOR A WRIT OF MANDAMUS

_____

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

I.     BACKGROUND AND FACTS ................................................................ 3

  a.    The Arrest and Detention of Mr. Weatherspoon ................................ 3

  b.    Summary of Petitioner's Habeas Claims ......................................... 7

  c.    Proceedings Before the District Court ............................................ 10

II.    ARGUMENT ........................................................................................ 12

  a.    The District Court's Failure Promptly to Consider the Habeas
        Corpus Petition is Tantamount to a Failure to Exercise Jurisdiction
        Lawfully Prescribed and May Deprive this Court of its Jurisdiction ........... 14

  b.    The District Court's Failure Promptly to Consider the Habeas
        Petition Will Irreparably Harm Petitioner Through Ongoing Illegal
        Detention and by Depriving Him of an Opportunity to Have his Rights
        Adjudicated ........................................................................... 16

III.   CONCLUSION .................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Bearden v. Georgia,*
    461 U.S. 660 (1983) .......................................................... 7

*Brangan v. Commonwealth,*
    477 Mass. 691, 2017 WL 3655047 (2017) ........................ 9

*Foucha v. Louisiana,*
    504 U.S. 71 (1992) ...............................................2, 16–17

*Frazier v. Jordan,*
    457 F.2d 726 (5th Cir. 1972) ............................................ 7

*In re Humphrey,*
    No. A152056, 2018 WL 550512 (Cal. Ct. App. Jan. 25, 2018) .................. 9, 10

*Johnson v. Rogers,*
    917 F.2d 1283 (10th Cir. 1990) ...........................3, 17, 18

*Jones v. Shell,*
    572 F.2d 1278 (8th Cir. 1978) ........................................ 18

*Knickerbocker Ins. Co. v. Comstock,*
    83 U.S. (16 Wall.) 258 (1872) ....................................... 12

*Lopez-Valenzuela v. Arpaio,*
    770 F.3d 772 (9th Cir. 2014) ............................................ 9

*In re Lott,*
    424 F.3d 446 (6th Cir. 2005) ......................................... 14

*Madden v. Myers,*
    102 F.3d 74 (3d Cir. 1996) ............................................ 14

*McClellan v. Young,*
    421 F.2d 690 (6th Cir. 1970) .......................15, 17, 18, 19

*In re Metro. Gov't of Nashville & Davidson Cty., Tenn.,*
    606 F.3d 855 (6th Cir. 2010) ......................................... 17

*Murphy v. Hunt,*
    455 U.S. 478 (1982) ...................................................... 15

*ODonnell v. Harris Cty., Tex.,*
    251 F. Supp. 3d 1052 (S.D. Tex. 2017) ........................ 7, 8

*ODonnell v. Harris Cty.*,
  No. CV H-16-1414, 2017 WL 1956736 (S.D. Tex. May 11, 2017) .......... 17, 18

*Pugh v. Rainwater*,
  572 F.2d 1053 (5th Cir. 1978) ........................................................................ 7

*Reem v. Hennessy*,
  No. 17-CV-06628-CRB, 2017 WL 6765247 (N.D. Cal. Nov. 29, 2017)........... 9

*Roche v. Evaporated Milk Assn.*,
  319 U.S. 21 (1943) ................................................................................. 12-13, 16

*SEC v. Bankers Alliance Corp.*,
  1995 WL 317586 (D.D.C. 1995) .................................................................... 19

*Stack v. Boyle*,
  342 U.S. 1 (1951) .......................................................................................... 15

*In re Syncora Guarantee Inc.*,
  757 F.3d 511 (6th Cir. 2014) .....................................................13, 14, 17, 18

*Tate v. Short*,
  401 U.S. 395 (1971) ........................................................................................ 7

*Thermtron Prods., Inc. v. Hermansdorfer*,
  423 U.S. 336 (1976) ...................................................................................... 13

*Turner v. Rogers*,
  564 U.S. 431 (2011) ........................................................................................ 7

*United States v. Bogle*,
  855 F.2d 707 (11th Cir. 1988) ...................................................................... 19

*United States v. Leathers*,
  412 F.2d 169 (D.C. Cir. 1969)........................................................................ 8

*United States v. Mantecon-Zayas*,
  949 F.2d 548 (1st Cir. 1991) ......................................................................... 8

*United States v. Montalvo-Murillo*,
  495 U.S. 711 (1990) ...................................................................................... 17

*United States v. Salerno*,
  481 U.S. 739 (1987) ............................................................................2, 7, 8, 9

*Wanatee v. Ault*,
  120 F. Supp. 2d 784 (N.D. Iowa 2000)................................................... 18–19

*Will v. Calvert Fire Ins. Corp.*,
    437 U.S. 655 (1978) .................................................................14, 15, 16

*Zadvydas v. Davis*,
    533 U.S. 678 (2001) ........................................................................ 16

**Statutes**

28 U.S.C. § 1651(a) ................................................................................. 12

Tenn. Code Ann. 40-11-118(b)(7) ........................................................... 4

**Other Authorities**

Charles Alan Wright, et al., 16 Federal Practice & Procedure § 3933.1
    (3d ed. 2017) ................................................................................. 14

iv

Petitioner Delchon Weatherspoon is in a Shelby County, Tennessee, jail cell awaiting trial. Like all criminal defendants in the American constitutional system, he is presumed to be innocent. No court has found that he is a flight risk. And no court has found that he poses an immitigable danger to the community. He is being detained because the state trial court required a secured money bail amount for his release that the court expressly acknowledged was impossible for him to pay. Deliberately setting an unaffordable money bail amount is equivalent to entering an order of pretrial detention. If the State of Tennessee wishes to enter an order of pretrial detention that incapacitates Mr. Weatherspoon prior to trial, it must comply with the substantive and procedural requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The State has not done so. Petitioner therefore asked that the district court issue a writ of habeas corpus ordering his release or, in the alternative, ordering his release unless the State provides an adversarial hearing that complies with the requirements for preventive detention described by the United States Supreme Court.

Respondent and Real Party in Interest Sheriff Bill Oldham has jailed Petitioner since January 1, 2017—more than thirteen months. On July 25, 2017, Petitioner, after fully exhausting all available state-court avenues for relief, filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Tennessee. On August 1, 2017, Petitioner filed a motion asking that his

1

habeas petition be decided in expedited fashion given his ongoing unconstitutional pretrial detention. By October 2, more than two months later, neither the district court nor Sheriff Oldham had acted on the petition, so Petitioner filed an emergency motion for an order to show cause why the petition should not be considered unopposed or, in the alternative, asking that the Sheriff be ordered to respond. After Sheriff Oldham responded to the motion (rather than to the habeas petition), the district court, on October 23, 2017, ordered the Sheriff to respond to the habeas petition and granted Petitioner's motion for expedited consideration. Petitioner remained in pretrial custody, notwithstanding the Supreme Court's holding that the right to pretrial liberty of a presumptively innocent person is "fundamental." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."); *United States v. Salerno*, 481 U.S. 739, 750 (1987). And notwithstanding the various periods of inaction, the Petition has been fully briefed since November 13, 2017. More than three months later, the district court still has not ruled on the habeas petition, despite having granted the request for expedited review and thereby recognizing that illegal pretrial detention causes irreparable harm.

Petitioner's criminal trial has been scheduled for June 4, 2018. Because each day Petitioner spends in custody without either conviction or a legally valid order of

pretrial detention irreparably harms him, and because his constitutional claims will become moot after his criminal trial, Petitioner respectfully requests a writ of mandamus ordering the district court to rule on his habeas petition promptly. "At this point, justice delayed is justice denied." *Johnson v. Rogers*, 917 F.2d 1283, 1284 (10th Cir. 1990) (issuing writ of mandamus ordering district court to rule promptly because "writs of habeas corpus are intended to afford a 'swift and imperative remedy in all cases of illegal restraint or confinement'" (citation omitted)).

## I.    BACKGROUND AND FACTS

Although the merits of Petitioner's habeas petition are not currently before this Court, a brief summary is helpful because it demonstrates that the simple relief he seeks—that the State either provide the constitutionally adequate bail hearing required before a presumptively innocent person may be incapacitated prior to trial or release him—is clearly required by law. Following that summary, the Petition discusses the proceedings in the district court.

### a.  The Arrest and Detention of Mr. Weatherspoon

Petitioner Delchon Weatherspoon was arrested on January 1, 2017, and charged with attempted murder. The General Sessions Court in Memphis required a secured money bail amount of $200,000 as a condition of his pretrial release. (*See* Doc. 1-1, Exhibit A, Transcript of Criminal Court Hearing, at 6 ["Transcript"].) Mr.

Weatherspoon appealed that decision to the Criminal Court, which reviewed the requirement of the financial condition of release de novo. (*Id.* at 6.)

The Criminal Court held a hearing on March 22, 2017. (*Id.*) At the hearing, counsel for Mr. Weatherspoon argued that he had no prior criminal record (*id.* at 19), that he had lasting ties to his community in Memphis (*id.* at 18–19), that he had served in the military (*id.* at 19), and that he was employed (*id.* at 18). Counsel introduced an affidavit of indigence. (*Id.* at 4.) The State stipulated that Mr. Weatherspoon is indigent and can pay, at most, $500. (*Id.* at 5.)

Counsel for Mr. Weatherspoon argued that the State was "depriving Mr. Weatherspoon of his liberty solely because he is poor" in violation of the United States Constitution and that the State had not met the requirements for a valid order of pretrial detention. (*Id.* at 21.)

The State introduced the testimony of a police officer who described the facts of the alleged offense. (*Id.* at 8–17.) The State presented no other evidence and no evidence at all that Mr. Weatherspoon had a criminal record or was at risk of fleeing before trial. (*See generally id.*) And the State presented no evidence that Mr. Weatherspoon was a danger to the community, other than the facts of the alleged offense, which, under Tennessee law, are not among the factors to be considered when assessing dangerousness in the pretrial context. *See* Tenn. Code Ann. 40-11-118(b)(7) (stating that "[t]he defendant's prior criminal record and the likelihood

that *because of that record* the defendant will pose a risk of danger to the community" is among the factors to consider in setting bail (emphasis added)). The State argued that Mr. Weatherspoon was being detained because there was probable cause that he committed a crime, not because he was poor.

The court stated only the following:

> Okay. I have considered the factors outlined in TCA 40-11-118 which include the defendant's length of residency in this community. I've considered his employment status, family ties, his lack of prior criminal record. I've considered the nature of the offense and the apparent probability of the conviction and the likely sentence. The nature of the offense is a very violent offense. The apparent probability of conviction apparently is great and if he is convicted of murder first–criminal attempt murder first, he's looking at serving 15 to 60 years in the State Penitentiary, a very significant sentence. In light of the serious nature of this offense, the injuries to the victim, I think the bond that's set is appropriate $200,000. He's not being incarcerated because he's poor. He's being incarcerated because the community has to be protected from any potential violence such as this. So your motion to reduce the bond is denied.

(*Id.* at 27.)

If Mr. Weatherspoon could pay to secure a $200,000 bond, he would be released immediately from the jail. Given prevailing practices in the commercial bail-bond industry, he could be released if he could afford between 1% and 10% of that amount upfront. Notwithstanding the order of release, he remains confined to a jail cell more than a year after his arrest simply because he does not have enough money. The court did not find that releasing Mr. Weatherspoon poses an immitigable risk of flight, and the court did not even consider whether any other combination of

5

conditions (such as home detention and electronic monitoring or other forms of pretrial supervision) could reasonably serve the State's interests and mitigate its concerns about protecting the community. Nor did the court even purport to apply the "clear and convincing" evidence standard—long required by the Supreme Court's due process cases when bodily liberty is at stake—to its consideration of whether Mr. Weatherspoon posed a danger to the community or whether alternatives to pretrial detention exist. Instead, the court used Mr. Weatherspoon's mere inability to pay money to enter a de facto order of pretrial detention without making the substantive findings or providing the procedural protections required for a valid order of pretrial detention.

Mr. Weatherspoon appealed the Criminal Court's decision to the Tennessee Court of Criminal Appeals. (Doc. 1-2, Exhibit B, Court of Appeals Order.) That court denied his appeal under an abuse-of-discretion standard, reasoning only that the "financial condition of the Defendant is only one" among many factors to be considered in setting bail under Tennessee law, and that the Criminal Court did not abuse its discretion in setting a money bail amount that it acknowledged Mr. Weatherspoon could not pay. (*Id.* at 2.) The appellate court did not address Mr.

Weatherspoon's Equal Protection and Due Process arguments, although those arguments were fully presented to that court.[1] (*See generally id.*)

Mr. Weatherspoon appealed to the Tennessee Supreme Court. (Doc. 1-3, Exhibit C, Weatherspoon Supreme Court Motion.) The Tennessee Supreme Court denied Mr. Weatherspoon's requested relief without opinion. (Doc. 1-4, Exhibit D, Tennessee Supreme Court Order.)

### b.  Summary of Petitioner's Habeas Claims

There are two principal constitutional problems with jailing a person prior to trial solely because he cannot pay a sum of money: (1) Jailing someone solely because he cannot pay a sum of money violates the Equal Protection and Due Process rights against wealth-based detention;[2] and (2) jailing someone only because he cannot pay a money bail amount violates the Constitution because it deprives a

---

[1] Sheriff Oldham concedes that Petitioner has exhausted state-court remedies. (Doc. 21, Answer ¶ 9.)

[2] The State may not jail someone simply because she cannot pay a sum of money. The Supreme Court held over 45 years ago that a person may not be "subjected to imprisonment solely because of his indigency." *Tate v. Short*, 401 U.S. 395, 397–398 (1971). And this principle is even stronger in the pretrial context prior to criminal conviction. *E.g., Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir. 1978) (en banc); *see ODonnell v. Harris Cty., Tex.*, 251 F. Supp. 3d 1052 (S.D. Tex. 2017). If the State wishes to detain someone—pretrial or otherwise—because he has not paid a sum of money, it must make a procedurally valid finding that he is able to pay the money and is refusing to, *Turner v. Rogers*, 564 U.S. 431, 449 (2011), or that there are no other alternatives to detention to meet specifically articulated state interests, s*ee Bearden v. Georgia,* 461 U.S. 660, 672–73 (1983); *Frazier v. Jordan,* 457 F.2d 726, 728–29 (5th Cir. 1972).

presumptively innocent person of the fundamental right to pretrial liberty without complying with the substantive and procedural requirements of a valid order of detention under the Due Process Clause, *United States v. Salerno*, 481 U.S. 739, 746 (1987). Thus, if the state jails someone prior to trial for nonpayment of a sum of money, it must either make a procedurally proper finding that the person is able to pay the sum and is willfully refusing to, or that jailing the person outright would be permissible under the Due Process Clause. "In our society," the Supreme Court has explained, "liberty is the norm and detention prior to trial or without trial is the carefully limited exception." *Salerno*, 481 U.S. at 755.

In this case, the money bail amount was chosen intentionally to detain Mr. Weatherspoon. Accordingly, there was no need for procedures concerning Mr. Weatherspoon's ability to pay: the State has conceded that the money bail amount on which Mr. Weatherspoon is detained is beyond his means. Therefore, the State may attempt to justify its unattainable money bail order only as an order of pretrial detention.

If the state requires a money bail amount that a person cannot afford to pay, it has entered the functional equivalent of an order of pretrial detention. *United States v. Mantecon-Zayas*, 949 F.2d 548, 550 (1st Cir. 1991); *United States v. Leathers*, 412 F.2d 169, 171 (D.C. Cir. 1969) ("[T]he setting of bond unreachable because of its amount would be tantamount to setting no conditions at all."); *ODonnell v. Harris*

8

*Cty., Texas*, 251 F. Supp. 3d 1052, 1074 (S.D. Tex. 2017) (holding that secured money bail set in amount that an arrestee cannot afford is constitutionally equivalent to an order of detention).

An order of pretrial detention is valid only if it complies with the substantive and procedural requirements of the Due Process Clause. *Id.* It must be narrowly drawn to serve a compelling government interest. *E.g.*, *Brangan v. Commonwealth*, 477 Mass. 691, 2017 WL 3655047, at *8–9 (2017); *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 781 (9th Cir. 2014) (*en banc*); *Reem v. Hennessy*, No. 17-CV-06628-CRB, 2017 WL 6765247, at *3 (N.D. Cal. Nov. 29, 2017) (granting habeas petition under materially identical circumstances). And it may issue only after a court has made reviewable findings that clear and convincing evidence supports the conclusion that the detainee poses a risk of flight or danger to the community *and* that no less-intrusive conditions of release could adequately mitigate either risk. *Salerno*, 481 U.S. 739; *In re Humphrey*, No. A152056, 2018 WL 550512, at *17 (Cal. Ct. App. Jan. 25, 2018) (holding under the U.S. Constitution that "[i]f the court concludes that an amount of bail the defendant is unable to pay is required to ensure his or her future court appearances, it may impose that amount only upon a determination by clear and convincing evidence that no less restrictive alternative will satisfy that purpose"). The State courts in this case did not make these findings, and so it is unclear whether Petitioner's detention is narrowly drawn to forward a compelling

9

state interest. Petitioner therefore asked that the district court issue a writ of habeas corpus ordering his release or, in the alternative, ordering his release unless the State provides an adversarial hearing that complies with the requirements for preventive detention described by the United States Supreme Court.

Because the state court in this case intentionally set a secured financial condition of release to detain Mr. Weatherspoon without meeting the substantive and procedural requirements for a valid order of detention, Mr. Weatherspoon is in custody in violation of the United States Constitution. *Humphrey*, 2018 WL 550512, at *17 ("The *Bearden* line of cases, together with *Salerno* and *Turner*, compel the conclusion that a court which has not followed the procedures and made the findings required for an order of detention must, in setting money bail, consider the defendant's ability to pay and refrain from setting an amount so beyond the defendant's means as to result in detention.").

### c.  Proceedings Before the District Court

On July 25, 2017, after exhausting his remedies in the state courts, Petitioner sought a writ of habeas corpus from the United States District Court for the Western District of Tennessee, asking that he be released unless the state courts conduct a procedurally valid hearing and find that clear and convincing evidence supports the conclusion that no alternatives short of pretrial detention would reasonably ensure the safety of the community. (Doc. 1, Petition.) On August 1, 2017, Petitioner

10

respectfully requested that the district court consider the Petition as expeditiously as possible because each day of illegal detention does him irreparable harm. (Doc. 9.)

By October 2, 2017, the district court had not acted, and Respondent had not even responded to the Petition. Petitioner accordingly filed an emergency motion for an order to show cause why the Petition should not be considered unopposed or, in the alternative, requesting that Respondent be ordered to respond to the Petition. (Doc. 10.) On October 10, 2017, the district court ordered the Respondent to respond. (Doc. 14, *as amended* Doc. 15.) On October 16, 2017, the Respondent responded to the motion for an order to show cause. (Doc. 18.) Petitioner filed a reply, with leave of court (Doc. 20), in support of his motion for an order to show cause, explaining that Respondent should be ordered to respond to the Petition. (Doc. 19-1.) On October 23, 2017, the district court ordered Respondent to do so and granted Petitioner's August 1 motion for expedited briefing and consideration of the Petition. (Doc. 20.) On November 6, 2017, Respondent responded to the Petition. (Doc. 21.) And on November 13, 2017, Petitioner replied. (Doc. 22.)

Nearly seven months have passed since Petitioner sought expedited relief from unlawful pretrial confinement. Petitioner is still in jail in violation of the United States Constitution because no court has conducted an adequate hearing and made an appropriate finding that he must be detained prior to trial notwithstanding the

presumption of innocence.[3] And Petitioner's trial has been scheduled for June 4, 2018. (Doc. 28-1, Exhibit A, State Court Case Summary.) If the district court does not rule promptly, petitioner will remain in unlawful pretrial detention for at least several additional months, after which his urgent constitutional claims will become moot.

## II.    ARGUMENT

This Court should issue a writ of mandamus because (1) in these circumstances, the district court's delay in adjudicating the petition for habeas corpus is tantamount to an unjustified refusal to exercise its jurisdiction and may deprive this Court of its jurisdiction to correct any errors of law; and (2) Petitioner has already been irreparably harmed, and his claims may become permanently moot if the district court does not adjudicate his petition soon.

Under the All Writs Act, 28 U.S.C. § 1651(a), courts of appeals may issue a writ of mandamus to district courts when "necessary or appropriate in aid of their respective jurisdictions." The most traditional function of the writ of mandamus "has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated*

---

[3] Eight days ago, Petitioner noticed the district court that he would seek a writ of mandamus from this Court if the district court did not rule on his petition by February 14, 2018. (Doc. 28.) The district court, at the time of this filing, has not ruled.

*Milk Assn.*, 319 U.S. 21, 26 (1943). Mandamus has long been considered proper to order a district court to decide a pending case. *Knickerbocker Ins. Co. v. Comstock*, 83 U.S. (16 Wall.) 258, 270 (1872) ("[Mandamus] will lie in a proper case to direct a subordinate Federal Court to decide a pending cause."); *see also Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 352 (1976). And mandamus is appropriate to ensure that a district court does not deprive—through unjustified delay, an inappropriate stay order, or otherwise—a party of a meaningful opportunity to raise her claims in both the district *and* appellate courts. *In re Syncora Guarantee Inc.*, 757 F.3d 511, 515 (6th Cir. 2014) (issuing writ of mandamus "to protect this court's future appellate jurisdiction and to ensure that the district court's stay order does not deprive [a party] of a meaningful opportunity to obtain timely review of the bankruptcy court's decision").

When considering applications for mandamus relief, this Court "consider[s] a number of factors, including . . . whether the party seeking the writ has adequate other means to attain the desired relief [and] whether the petitioner will be irreparably damaged or prejudiced if the writ is not granted." *In re Syncora Guarantee Inc.*, 757 F.3d at 515. Although this Court has described several other factors counseling mandamus that do not apply here because Petitioner challenges

the district court's inaction rather than a district court's order,[4] this Court has described its "approach [as] flexible," *id.*, and has "never required that every element be met in order for mandamus to issue." *In re Lott*, 424 F.3d 446, 449 (6th Cir. 2005).

### a. The District Court's Failure Promptly to Consider the Habeas Corpus Petition is Tantamount to a Failure to Exercise Jurisdiction Lawfully Prescribed and May Deprive this Court of its Jurisdiction

Sometimes not exercising jurisdiction promptly is the same as not exercising it at all. In these circumstances, "an appellate court may issue a writ of mandamus on the ground that undue delay is tantamount to a failure to exercise jurisdiction." *Madden v. Myers*, 102 F.3d 74, 79 (3d Cir. 1996) (citations omitted); *see also* Charles Alan Wright, et al., 16 Federal Practice & Procedure § 3933.1 & n.42 (3d ed. 2017) (citing *In re Metro. Gov. of Nashville and Davidson Cnty., Tenn.*, 606 F.3d 855, 867 (6th Cir. 2010), for the proposition that "if a judge simply delays too long in deciding a pending case, a writ may issue on the ground that undue delay is tantamount to failure to exercise jurisdiction").

A delay in adjudicating a claim is tantamount to failure to exercise jurisdiction where a district court's delay is persistent, without reason, and threatens to deprive

---

[4] "[W]hether the district court's order is clearly erroneous as a matter of law, whether the district court's order incorporates an oft-repeated error or manifests a persistent disregard of the federal rules, and whether the district court's order raises new and important problems, or issues of law of first impression." *In re Syncora Guarantee Inc.*, 757 F.3d at 515 (numerals removed).

14

a party of its right to meaningful consideration or to deprive the appellate court of its lawful jurisdiction. "There can be no doubt," the Supreme Court has said, "that where a district court persistently and without reason refuses to adjudicate a case properly before it, the court of appeals may issue the writ [of mandamus] 'in order that [it] may exercise the jurisdiction of review given by law.'" *Will v. Calvert Fire Ins. Corp.*, 437 U.S. 655, 662 (1978) (quoting *Comstock*, 83 U.S. (16 Wall.) at 270). "Otherwise, the appellate jurisdiction could be defeated and the purpose of the statute authorizing the writ thwarted by unauthorized action of the district court obstructing the appeal." *Id.* And where the petitioner's claim will become moot if it is not promptly adjudicated, delay risks putting the case in a position where it cannot be adjudicated at all. *See, e.g.*, *McClellan v. Young*, 421 F.2d 690, 691 (6th Cir. 1970). In these circumstances, the delay constitutes both a failure to exercise jurisdiction and threatens to deprive the appellate court of its jurisdiction.

Claims alleging illegal pretrial detention present these risks. As the Supreme Court has explained, claims alleging illegal pretrial detention must be adjudicated promptly. Because a "claim to pretrial bail [is] moot" upon either acquittal or conviction, *Murphy v. Hunt*, 455 U.S. 478, 481 (1982), "[r]elief in this type of case must be speedy if it is to be effective," *Stack v. Boyle*, 342 U.S. 1, 4 (1951); *accord id.* at 12 (Jackson, J., concurring) ("[U]nless it can be reviewed before sentence, it never can be reviewed at all.").

15

Petitioner's criminal trial has been scheduled for June 4, 2018, (Exhibit A, State Court Case Summary), and the district court has persistently refused to adjudicate the habeas petition without reason or justification, despite granting Petitioner's emergency requests for expedited consideration and briefing, and despite Petitioner's notice that the district court's delay was continuing to result in irreparable harm and threating to moot the case. Unless there is a mistrial, Petitioner will either be acquitted and released or convicted and sentenced; either way, his illegal pretrial detention will be over and his habeas petition will be moot. Therefore, if the district court does not exercise its jurisdiction and rule on the habeas petition soon, it needlessly and inappropriately risks putting the case in a position where the court will no longer be able to. And if the district court does not exercise its jurisdiction and rule on the habeas petition very soon, it needlessly and inappropriately risks depriving this Court of its jurisdiction to review the habeas petition should either party appeal. Mandamus is therefore proper to "compel [the district court] to exercise its authority . . .," *Roche*, 319 U.S. at 26, and to "protect the appellate jurisdiction" of this Court from the "unauthorized action of the district court . . . ." *Will*, 437 U.S. at 662.

> **b. The District Court's Failure Promptly to Consider the Habeas Petition Will Irreparably Harm Petitioner Through Ongoing Illegal Detention and by Depriving Him of an Opportunity to Have his Rights Adjudicated**

Petitioner's core right to bodily liberty is at stake in this case. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."); *United States v. Montalvo-Murillo*, 495 U.S. 711, 716 (1990) (holding that release prior to trial is a "vital liberty interest"). And the harm that he suffers from the deprivation of that liberty is irrevocable. *E.g.*, *ODonnell v. Harris Cty*., No. CV H-16-1414, 2017 WL 1956736, at *1 (S.D. Tex. May 11, 2017) (denying a stay of injunction pending appeal because "the harm to the plaintiffs if the preliminary injunction is stayed is far greater than any harm to the defendants appealing the order if a stay is denied").

Mandamus is appropriate where a party may be irreparably prejudiced absent the relief. *See In re Syncora Guarantee Inc.*, 757 F.3d at 515; *see also In re Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 606 F.3d 855, 863 (6th Cir. 2010) (noting that mandamus is appropriate where, among other things, "the petitioner will be damaged or prejudiced in a way not correctable on appeal"). Particularly for habeas corpus petitions that do not challenge a conviction or sentence, and that are therefore appropriately filed under 28 U.S.C. § 2241, mandamus relief is appropriate because

"writs of habeas corpus are intended to afford a 'swift and imperative remedy in all cases of illegal restraint or confinement.'" *Johnson v. Rogers*, 917 F.2d 1283, 1284 (10th Cir. 1990) (issuing writ of mandamus because "[a]t this point, justice delayed is justice denied").

In *McClellan*, 421 F.2d at 691, this Court issued a writ of mandamus because, among other things, the district court did not decide a habeas corpus petition within four months of filing and because the district court explained the delay only by saying that his docket was "unusually crowded," *id.* Other circuits have noted that habeas corpus petitions challenging illegal confinement are entitled to speedy consideration, lest "the writ of habeas corpus, challenging detention, [be] reduced to a sham . . . ." *Jones v. Shell*, 572 F.2d 1278, 1280 (8th Cir. 1978) (granting writ of mandamus where district court failed promptly to adjudicate habeas claim on remand from circuit court); *see also Johnson*, 917 F.2d at 1284. And this Court has held that "[t]he deprivation of meaningful and timely appellate review itself constitutes substantial and irreparable prejudice." *In re Syncora Guarantee Inc.*, 757 F.3d at 515 (citing *In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 304 (6th Cir. 1984)).

The district court's delay in considering Petitioner's habeas petition has already irreparably harmed him; each day harms him further; the total delay risks irrevocable prejudice to his legal rights; and, all the while, the district court has

offered no justification for the delay. To the contrary, the court previously granted Petitioner's emergency motion and motion to decide the case in expedited fashion. Illegal confinement is irreparable harm. *See ODonnell v. Harris Cty., Texas*, 251 F. Supp. 3d 1052, 1168 (S.D. Tex. 2017) (finding irreparable harm where plaintiffs were detained because they could not pay money bail); *see also ODonnell v. Harris Cty.*, No. CV H-16-1414, 2017 WL 1956736, at *1 (S.D. Tex. May 11, 2017) (denying a stay of injunction pending appeal because "the harm to the plaintiffs if the preliminary injunction is stayed is far greater than any harm to the defendants appealing the order if a stay is denied"); *Wanatee v. Ault*, 120 F. Supp. 2d 784, 789 (N.D. Iowa 2000) ("[U]nconstitutional incarceration generally constitutes irreparable harm to the person in such custody."); *SEC v. Bankers Alliance Corp.*, 1995 WL 317586, at *3 (D.D.C. 1995) ("As for the question of irreparable harm in the absence of a stay, clearly Mr. Lee will be harmed by being incarcerated."); *United States v. Bogle*, 855 F.2d 707, 710–11 (11th Cir. 1988) (holding that the "unnecessary deprivation of liberty clearly constitutes irreparable harm"). The district court has so far said nothing about the reasons for the delay, despite *granting* Petitioner's motion for expedited consideration and thereby acknowledging the urgency of his claims, and despite Petitioner's warning that his case will soon become moot. (Docs. 20, 28.) And if the district court does not act soon, Petitioner will never get a final ruling on the lawfulness of his pretrial detention, which is his

19

right. *Cf. McLellan*, 421 F.2d at 691 ("Habeas corpus is a speedy remedy entitled to preferential consideration to insure expeditious hearing and determination."). This Court should issue a writ of mandamus directing the district court to rule on Petitioner's habeas petition promptly.

## III.    Conclusion

Because each day Petitioner spends in illegal custody irreparably harms him, and because he will be irrevocably prejudiced if his habeas petition is not fully resolved before his criminal trial, Petitioner respectfully requests a writ of mandamus ordering the district court to rule on his petition promptly.

Respectfully submitted,


*/s/ Charles Gerstein*
Charles Gerstein
Alec Karakatsanis
Civil Rights Corps
910 17th Street NW, Suite 200
Washington, DC 20006
charlie@civilrightscorps.org
(202) 670-4809

*/s/ Amir Ali*
Amir Ali
Roderick & Solange MacArthur Justice Center
718 7th Street NW
Washington, DC 20001
Amir.ali@macarthurjustice.org
(202) 869-3434

Emma J. Redden
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
First Tennessee Building
165 Madison Avenue, Suite 2000
Memphis, Tennessee  38103
Telephone: (901) 577-8158
Facsimile: (901) 577-0882

*Attorneys for Petitioner*

## **CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I hereby certify that this Petition, according to Microsoft Word's word-count function, contains 4,923 words, excluding the caption, tables of contents and authorities, and certificates.

*s/ Charles Gerstein*
Charles Gerstein

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Federal Rule of Appellate Procedure 21, I certify that I caused a copy of the foregoing document to be served on counsel of record for Respondent and Real Party in Interest Sheriff Bill Oldham via email and via the CM/ECF System for the United States District Court for the Western District of Tennessee; I certify that I provided a copy to the Respondent, the Honorable Samuel H. Mays, via email and via the CM/ECF System for the United States District Court for the Western District of Tennessee.

*/s/ Charles Gerstein*
Charles Gerstein